IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TONY D. RILEY,**

    **Plaintiff,**

v.                                                          Civil Action No. 3:16cv49
                                                                    (GROH)

**JENNIFER SAAD, Warden, FCI Hazelton;
DUNN, Associate Warden, FCI Hazelton;
RAMOS, Associate Warden for Medical
or Health Service, FCI Hazelton; T. KOCH,
RN, BSN, CCHP, Assistant Health Services
Administrator, FCI Hazelton; D. YOUNG,
Counselor, FCI Hazelton; BOWEL BALL,
Medical Administrator, FCI Hazelton,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On April 18, 2016, Tony D. Riley ("Plaintiff"), an inmate then-incarcerated at FCI Hazelton[1] in Bruceton Mills, West Virginia, initiated this *pro se* civil rights action by filing a Bivens[2] complaint against the above-named defendants. ECF No. 1. Along with his complaint, Plaintiff filed a motion to proceed *in forma pauperis* ("IFP") and supporting documents. ECF Nos. 2, 3, & 4. On April 21, 2016, Plaintiff filed a document docketed by the Clerk of Court as "Supplemental Information re: Complaint." ECF No. 7. The Plaintiff was granted permission to proceed as a pauper on April 26, 2016 and was directed to pay an initial partial filing fee ("IPFF"). ECF No. 9. On April 28, 2016, Plaintiff filed another document docketed by the Clerk as "Supplemental Information re: Complaint." ECF No. 10. On June 13, 2016 and again on June

---

[1] Plaintiff was released from prison on February 21, 2017 and now resides in Syracuse, New York.

[2] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

16, 2016, Plaintiff filed two more documents, each docketed by the Clerk as "Other Document." ECF Nos. 13 & 14.

On June 20, 2016, Plaintiff was directed to show cause within fourteen days why his case should not be dismissed for the failure to prosecute. On June 27, 2016, Plaintiff filed a response to the Show Cause Order. ECF No. 17. On July 13, 2016, Plaintiff sent a letter to the Clerk, initially addressing why his IPFF had not been sent, then discussing the medical problem addressed in his complaint and attaching some prescription refill slips. ECF No. 18.

By Order entered August 5, 2016, Plaintiff's response to the Show Cause Order was construed as Motion to Reconsider and granted; his previously assessed IPFF was waived but directed that he still pay the entire fee when his financial circumstances permit. ECF No. 19.

On August 10, and again on August 11, 2016, the Plaintiff filed two more documents docketed by the Clerk as "Other Document." ECF Nos. 20 & 22.

On August 15, 2016, Plaintiff paid his IPFF. ECF No. 23. On October 4, 2016, the undersigned conducted a preliminary review of the file, determined that summary dismissal was not appropriate, and directed the United States Marshal Service to serve the complaint. Accordingly, an order to answer was entered.

On October 21, 2016, Plaintiff filed another documented docketed by the Clerk as "Other Document," along with a Motion to Appoint Counsel. ECF Nos. 30 & 31. By Order entered October 24, 2016, Plaintiff's Motion to Appoint Counsel was denied. ECF No. 32. On October 31, 2016, Plaintiff filed another documented docketed by the Clerk as "Other Document." ECF No. 34. On December 1, 2016, the Defendants moved for an extension of time and consolidated response date. ECF No. 35. By Order entered December 2, 2016, the Defendants' motion was granted. ECF No. 36. On December 21, 2016, Plaintiff filed a response to the Defendants'

motion for an extension of time. ECF No. 51. On December 27, 2016, Plaintiff filed a Motion to Consolidate Cases. ECF No. 52. On January 3, 2017, Plaintiff filed another document docketed by the Clerk as "Other Document." ECF No. 53. By Order entered January 5, 2017, Plaintiff's Motion to Consolidate Cases was denied. ECF No. 54.

The Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support on January 11, 2017. ECF Nos. 55 & 56. Along with their dispositive motion, Defendants filed a Motion to Seal Unredacted Documents. ECF No. 57. By Order entered January 24, 2017, the Motion to Seal was granted. ECF No. 59. That same day, because Plaintiff was proceeding *pro se,* the Court issued a Roseboro Notice. ECF No. 61. On February 1, 2017, Plaintiff filed a response to the Roseboro Notice, along with a Motion for Entry of Default, contending he had not received a copy of Defendants' response. ECF Nos. 64 & 65. By Order entered February 16, 2017, the motion for default was construed as a motion for a copy of the Defendants' response; Defendants were directed to re-send a copy of their response and dispositive motion to Plaintiff via certified mail, return receipt requested; to provide proof of the same to the court; and the time for Plaintiff to respond was re-set. ECF No. 67. The Order was sent via certified mail, return receipt requested, to FCI Cumberland, Plaintiff's then-last-known address as reflected on the docket. A review of the docket indicates that the Order was accepted at FCI Cumberland on February 21, 2017. ECF No. 69. However, Plaintiff was released from prison that day. That same day, Defendants filed a certificate of service, evincing having re-served Plaintiff with their response and dispositive motion on February 21, 2017 via certified mail [ECF No. 68]; Defendants filed the certified mail return receipt, showing that their response and dispositive motion was received at FCI Cumberland on February 24, 2017. ECF No. 73. Because Plaintiff was released from prison on February 21, 2017, it was presumed he

3

did not receive the mailing. On February 27, 2017, the February 16, 2017 Order was returned as undeliverable from FCI Cumberland, with a notation "not here." ECF No. 70. On March 2, 2017, Plaintiff filed an informal change of address. ECF No. 71. The Clerk of Court sent Plaintiff a court-approved Notice of Change of Address to complete and return.[3] ECF No. 72. On March 8, 2017, the Defendants re-sent their response and dispositive motion to Plaintiff via certified mail at his new address and filed proof of the same with the court, showing that Plaintiff accepted the delivery on March 10, 2017. ECF No. 74. Also on March 8, 2017, the Clerk re-sent Plaintiff a copy of the February 16, 2017 Order via certified mail, to both his former and current addresses. The certified mail return receipt for that mailing has not yet been returned, and although Plaintiff has not yet filed a response, it is clear that he did receive the first mailing after all, thus, there is no need to wait for him to respond again.

This case is before the undersigned for a Report and Recommendation ("R&R") on Defendants' dispositive motion.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, Plaintiff raises claims of deliberate indifference to serious medical needs in violation of his Eighth Amendment rights; inadequate medical care; racial discrimination; and conditions of confinement in the Special Housing Unit ("SHU"). ECF No. 1 at 7 – 8. He contends he has been denied an MRI, despite having symptoms of numbness, pinching, burning, and weakness on his whole left side which gives him little ability to use that side of his body. Id. at 8 – 9. Attached to his complaint are copies of four grievances filed in

---

[3] As of the date of this R&R, Plaintiff has not returned the court-approved form Notice of Change of address in this case, but he did file it in the other Bivens action he has pending in this district: Case No. 3:16cv26 at ECF No. 39.

early March, 2016 regarding his medical care [ECF No. 1-2 at 1 – 4] and excerpts from his medical records. ECF No. 1-3 and ECF No. 1-4.

Regarding whether he exhausted his administrative remedies regarding the claims in his complaint, Plaintiff states "I have a BP8 and a BP9 and I am awaiting the ans[wer] on the BP10." Id. at 4. He attaches copies of his grievances. See ECF No. 1-2 at 1 – 4.

As relief, he requests Three Hundred Fifty Thousand Dollars ($350,000.00) in monetary damages, and injunctive relief in the form of a request that this court "make sure that they never do this to another human being." Id. at 9.

### B. **Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

Defendants argue that the complaint should be dismissed or summary judgment be granted in their favor because:

1) Plaintiff failed to exhaust his administrative remedies before filing suit [ECF No. 56 at 4];

2) Plaintiff cannot maintain any Bivens claims against Defendant Timothy Koch, because Koch is a Public Health Officer and is therefore immune from suit [id. at 6];

3) Plaintiff's claims against Warden Saad and Associate Wardens Dunn and Ramos should be dismissed because they had no personal involvement in Plaintiff's medical care [id.];

4) Plaintiff has not pled a viable Eighth Amendment claim of deliberate indifference to serious medical needs [id. at 8];

5) Plaintiff's claims against Defendants Desiree Young and "Bowell Ball" must be dismissed for failure to state a claim [id. at 10];

6) Plaintiff's conditions of confinement in the SHU claims should be dismissed because he has not alleged that the conditions were anything more than ordinary hardships of prison life [id.]; and

7) all of Plaintiff's claims should be dismissed because all of the Defendants are entitled to qualified immunity. Id. at 12.

### C. **Plaintiff's Response**

5

Along with his Motion for Default Judgment, asserting that he never received a copy of the Defendants' response, Plaintiff filed a response, a review of which makes it apparent that Plaintiff did receive the Defendants' response and dispositive motion after all, because his response not only reiterates his own arguments, it attempts to refute the arguments and points made in Defendants' memorandum in support of their dispositive motion. Plaintiff specifically denies Defendants' claim that he once refused an MRI when it was offered [Cf. ECF No. 56 at 3 and ECF No. 64 at 1]. Further, he contends that "the Attorney is talking about the surgery I had in 2008 but I was talking about April the 4-7-2015 when I went before my surgeon[.]" ECF No. 64 at 2. Finally, he asserted that "they stated three years ago on 3-31-2014 that I had received an MRI of the brain cervical, and lumbar spine and the results of the MRI of the brain were normal but the cervical spine the impression was 1) diffuse degenerative change without focal abnormality and malalignment[.]" Id. at 5.

### III. Standard of Review

**A. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

6

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128

(10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

### III. Analysis

**Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior

to filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[4] An inmate is not deemed to have exhausted his

---

[4] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Here, Plaintiff's complaint implicitly admits that he did not fully exhaust his administrative grievances before filing suit, saying "I have a BP8 and a BP9 and I am awaiting the ans[wer] on the BP10." See ECF No. 1 at 4. In purported proof of this, he attaches four BP-8s, one dated March 7, 2016, and the other three, all dated March 10, 2016. ECF No. 1-2 at 1 – 4. All four address medical issues. The first, dated March 7, 2016, mentions pain medication and requests an MRI. Id. at 3. The first of the remaining three gives an address for the BOP to send for his medical records and asks "why are you all stopping my pain medication [?] I am not going through this[.]" Id. at 1. The next one reiterates his request for an MRI and discusses the numbness, tingling, weakness, back and knee pain Plaintiff was then experiencing. Id. at 2. The last one addresses Plaintiff's request for back and knee braces. Id. at 4. The March 7, 2016 BP-8 has what appears to be a March 13, 2016 response from T. Koch, RN, BSN, CCHP, Assistant Health Supervisor; the remaining ones all have March 15, 2016 responses from T. Koch.

As a preliminary point, the undersigned notes that although pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 13, the eight other documents filed by Plaintiff after

he filed his complaint, which were docketed by the Clerk either as "supplemental information" or as "other document," were not authorized by the LR PL P and should have been stricken from the docket and returned to him. However, they were not; nonetheless, the undersigned has reviewed them and notes that among them is an "other document" postmarked October 19, 2016 and filed on October 21, 2016 that appears to allege that an officer at the prison may have interfered with Plaintiff sending copies of his administrative remedies to the court. It states in pertinent part:

> On 10-16-2016 as I was sending the court all of the Administrative Remedy Officer Kowalkoski said how do I know it is for the court and she rip it open I had retaliation falsely exponged charge the package had everything I had never not seal my legal mail but that time she rip it open and what was so strong she never open the small that stated the same thing she is a polish T.R. female officer that just start from one of Hazelton other unit their four of them and they are all racial please if any thing is missing she officer Kowalskoski has it because I had everything BP8 BP9 BP10 and other thing as I said I know she was up to something

ECF No. 30 at 1 (all grammatical, spelling and punctuation errors in original).

The Defendants also note that Plaintiff acknowledges he did not fully exhaust before filing suit, given that he asserts that he was awaiting an answer on his BP-10 when he filed the complaint, implicitly admitting he had not filed any appeal with the Central Office at the time he filed his complaint. Moreover, the Defendants point out, the only grievances Plaintiff has filed are with respect to his medical care; he has filed no grievances regarding his other claims of racial discrimination and/or the conditions of confinement in the SHU. ECF No. 56 at 5. Defendants attach a copy of the Declaration of Howard Williams, Legal Assistant and Administrative Remedy Clerk, Mid-Atlantic Regional Office of the BOP, attesting to the same. ECF No. 56-1, ¶ 5 at 3. Defendants also attach a copy of Plaintiff's BOP Administrative Remedy Generalized Retrieval, listing all of the grievances he filed while incarcerated, with the Remedy

ID numbers and the dates received. None of the four BP-8s Plaintiff attached to his complaint even show up on this list, presumably because a Remedy ID number does not attach until a BP-9 is filed. The only grievance on the list at all received during the month of March, 2016 is one that was received on March 14, 2016 and rejected on March 21, 2016; clearly, it is not any of the four BP-8s Plaintiff produced. See ECF No. 56-1 at 12. Further, given the dates on the BP-8s Plaintiff produced and the time frames required for exhaustion, it is apparent that he would not have had sufficient time to exhaust any of them by April 18, 2016, the date he filed the complaint.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, while it appears that the Plaintiff has implicitly claimed that an officer at the prison may have thrown away copies of his BP-8s, BP-9s, and BP-10s that he was trying to send the court, Plaintiff's claim does not appear credible, given that the BOP Administrative Remedy Generalized Retrieval shows that none of the four BP-8s Plaintiff filed before he filed suit ever went beyond the BP-8 level. Further, Plaintiff makes no mention of having sent copies of any BP-11, to show he ever completed the final step in exhausting any grievance. While the BOP Administrative Remedy Generalized Retrieval does show that there were other grievances filed in April, August, and December, 2016, none of those grievances, no matter what they alleged, could possibly have been fully exhausted before the date Plaintiff filed suit on April 18, 2016. Even if it were true that an officer did prevent Plaintiff from mailing copies of grievances to the court in October, 2016, Plaintiff nowhere allege that prison officials *prevented him from exhausting* his administrative remedies. Finally, Plaintiff make no claim that prison officials ever threatened him with violence to discourage him from filing grievances. Accordingly, this matter is due to be dismissed for failure to exhaust administrative remedies.

## V. Recommendation

For the reasons stated above, the undersigned hereby recommends that Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment [ECF No. 55] be **GRANTED** and Plaintiff's complaint be **DENIED and DISMISSED with prejudice.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to all counsel of record via electronic means.

DATED: March 20, 2017

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE